# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7757 | **DATE** | March 27, 2003 |
| **CASE TITLE** | Lisa Maldonado | v | Ill State Board of Education, et al |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ■ Status hearing set for 4/17/03, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, both parties' motions for summary judgment re: counts 1-6 are denied, and those counts are dismissed as moot. Defendants' motion for summary judgment re: §1983 claim is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | MAR 28 2003 | |
| | Notified counsel by telephone. | | date docketed | 35 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 03 MAR 27 AM 10:43 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA MALDONADO, on behalf of DARIUS )
SANFORD, a minor, )
)
Plaintiff, )
) No.   01 C 7757
v. )
) Judge Robert W. Gettleman
ILLINOIS STATE BOARD OF EDUCATION, )
THOMAS AVER, Principal, SANDRA )
SLAUGHTER, EUNICE GILBERT, Case Manager,)
JOAN JANKAUSKA, Psychologist, ARLENE )
LANG, Nurse, SUSAN L. MARTIN, Social )
Worker, and BOARD OF EDUCATION OF THE )
CITY OF CHICAGO, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

On March 11, 2002, plaintiff filed an eight-count amended complaint on behalf of her son, Darius, seeking administrative review of an impartial due process hearing officer's decision regarding Darius' special education eligibility pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400, et seq. ("IDEA"), and alleging numerous violations of Darius' constitutional and statutory rights. In her amended complaint, plaintiff seeks, (1) a reversal of the decision of the hearing officer who presided over Darius' due process hearing, (2) appropriate compensatory education, (3) a change in Darius' educational placement, (4) a declaratory judgment that 23 Ill. Admin. Code § 226.540(a)(3) violates the IDEA, and (5) damages under 42 U.S.C. § 1983.

Defendants have moved for summary judgment with respect to Counts I through VIII of the amended complaint, and plaintiff cross-moved for partial summary judgment with respect to Counts

I through VI. For the reasons stated herein, both sides' motions for summary judgment with respect to Counts I through VI are denied as moot in light of the parties' settlement of prospective educational issues. Moreover, defendants' motion for summary judgment on Counts VII and VIII is granted in part and denied in part.

## FACTS

During the 1998-1999 school year, Darius attended third grade at Donoghue School in Chicago, where he served eighteen days of suspension and an in-school suspension, for yelling profanities and refusing to work. On his report card, Darius received Ds and Fs in effort, his fourth quarter grades were all Ds and his teacher reported problems with self-control, accepting responsibility, practicing courtesy, and completing assignments. Darius repeated the third grade at Carnegie School during the 1999-2000 school year, during which he served an additional eleven days of suspension for fighting with classmates and swearing at his teacher. During this time, he received failing grades in English, proofreading, reading and math.

During the 2000-2001 school year, while he was in fourth grade at Carnegie School, Darius was suspended for a total of fifty days, distributed over six separate occasions. Specifically, he was suspended for ten days on September 13, 2000, October 18, 2000, November 11, 2000, and February 1, 2001, and for five days on February 23, 2001, and March 7, 2001. The incidents giving rise to the suspensions involved fighting with other students, yelling profanities and verbally confronting school personnel. Further, in fall 2000, Darius' progress report stated that his school work was unsatisfactory in all academic subjects.

On twenty-four other days during the 2000-2001 school year, Darius was verbally reprimanded, a discipline report was completed, and Darius' mother was called. Moreover,

2

school officials called the Chicago police department regarding Darius on at least five occasions between January 31, 2001, and January 8, 2002.[1]

On November 8, 2000, Mr. Avery, principal of Carnegie School, moved Darius from his regular education classroom to a self-contained, cross-categorical special education classroom. This placement was made without conducting an evaluation to determine if Darius had a disability, without determining his eligibility for special education, and without developing an individualized education program (IEP). Moreover, the school did not seek plaintiff's consent before placing Darius in the special education classroom.

On February 2, 2001, plaintiff attended a meeting with employees of School District 299 to discuss conducting a case study evaluation to determine Darius' eligibility for special education. Although plaintiff's signature appears on the bottom of the form entitled, "Parent/Guardian Consent for Case Study Evaluation/Reevaluation," plaintiff disputes that she signed the form. Moreover, neither the box indicating consent nor the box indicating refusal to consent is checked on the consent form.

On February 27, 2001, March 1, 2001, and March 26, 2001, plaintiff sent letters to School District 299 (the Chicago Public Schools, or "CPS") indicating that she did not want Darius to be evaluated. On March 7, 2001, plaintiff sent a letter to Eunice Gilbert, Darius' case manager, requesting that Darius remain in Mr. McShan's classroom. Plaintiff was not aware, however, that Mr. McShan's class was a special education class.

---

[1] According to the discipline and incident reports comprising Exhibit D, attached to plaintiff's Local Rule 56.1 statement, arrests were made on March 19, 2001, October 29, 2001, November 20, 2001, and January 8, 2002, and the police were also notified on February 1, 2001.

In a March 9, 2001, letter, Gilbert informed plaintiff that, pursuant to Illinois law, she had to file for a due process hearing in order to revoke her consent to the case study evaluation. Gilbert attached a copy of the pertinent sections of the Illinois Administrative Code that explained how to proceed. In a letter dated March 14, 2001, Jay Kraning of the Due Process and Mediation Office of Specialized Services for the CPS instructed Gilbert to continue with the case study evaluation and conduct an IEP meeting. According to Kraning's letter, "As of today's date, my Department has not received a request for due process from the parent of this student. Your staff must continue the case study process and conduct the IEP team meeting until such time that they are ordered by a hearing officer to stop. It is expected that your staff will comply with their legal obligation." Plaintiff filed a request for an impartial due process hearing on March 26, 2001.

Darius' special education evaluation was completed on March 29, 2001. A case study evaluation and IEP team meeting were held on April 6, 2001. At the meeting, CPS staff determined that Darius has an emotional/behavior disorder and learning disability, and thus qualifies for special education services. Plaintiff consented to Darius being placed in Mr. McShan's classroom, but contested Darius' eligibility for special education services.

The due process hearing was conducted on June 7, 2001, before impartial hearing officer Francis J. Nowik ( the "IHO"). In the pre-hearing conference report, dated May 19, 2001, and incorporated into the record of the due process hearing, the IHO summarized plaintiff's position as follows:

> The District did not have authority to evaluate her son since she did not give consent to do a case study evaluation, or in the alternative, if she did give consent she revoked that consent by giving the District notice that she was revoking her

consent. She feels that the District did not consult with her on her son's placement. She objects to the fact that the District placed her son in self contained special education room prior to the case study being completed and that her son has been suspended for more that [sic] 50 days during the current school year. She feels that her son is not eligible for special education and should not be labeled as a special education student.

After summarizing the District's position, which did not mention Darius' suspensions, the IHO identified the issues for the due process hearing as follows: (1) did the parent give her consent for the case study evaluation; (2) if consent was given, was that consent revoked by the parent; (3) if the case study evaluation was authorized by the parent, is the finding that the child is eligible for special education appropriate; and (4) did the district's staff violate the rights of the parent or child?

After hearing testimony and reviewing documentary evidence, the IHO issued his decision and order, which provided that: (1) plaintiff gave written consent to the evaluation; (2) pursuant to Illinois law, specifically 23 Ill. Admin. Code § 226.540,[2] parental consent cannot be revoked until a due process hearing is conducted, and the consent remained valid until a hearing officer determined otherwise; (3) the Chicago School Board's determination that Darius is eligible for special education services is appropriate; and (4) placement of Darius in Mr. McShan's classroom prior to obtaining plaintiff's consent was inappropriate. He did not award any damages or other relief to plaintiff and Darius for the inappropriate placement, however.

---

[2]23 Ill. Admin. Code § 226.540(a)(3) provides that a parent's consent is voluntary and may be revoked at any time by means of a due process hearing. 23 Ill. Admin. Code § 226.540(i) further provides that if a parent desires to revoke consent, he or she shall request a due process hearing, and that "[a]ny revocation of consent as a result of a due process hearing is not retroactive, i.e., it does not negate an action that occurred after the consent was given and before it was revoked." As discussed below, the Illinois State Board of Education has agreed to amend this regulation to conform to the IDEA.

5

In concluding that plaintiff signed the form, the IHO noted although the form "may not have been completely filled out, there is no doubt that the parent gave her consent to do the evaluation according to [Gilbert's] testimony.... All of the district's personnel involved in 2/2/01 conference were clear in their testimony that the parent had given consent for the evaluation. I conclude that the parent did indeed sign the consent form for an evaluation." Plaintiff's letters attempting to revoke her consent further persuaded the IHO that plaintiff "was attempting to stop an evaluation that she was aware was going to otherwise happen."

In her opening statement at the due process hearing, plaintiff attempted to address Darius' suspensions.[3] After plaintiff indicated that she would like Darius promoted to the fifth grade as compensation for his suspensions, the IHO responded that compensatory education, in the form of summer school, might be appropriate to enable Darius to make up the lost school days. Plaintiff indicated dissatisfaction with this proposal, however. In his decision and order, the IHO noted that "[t]he parent's attempt to raise issues related to prior suspensions, clearing of student records, and the child's promotion to the next grade level were not considered since this due process hearing is not the appropriate forum for such issues."

In her first amended complaint, plaintiff asserts eight counts against the Illinois State Board of Education ("ISBE"), the Board of Education of the City of Chicago, Thomas Avery (Carnegie School's principal), Sandra Slaughter (Carnegie School's assistant principal), Eunice Gilbert (Darius' case manager), Joan Jankauska (a school psychologist employed by School District 299), Arlene Lang (a nurse employed by School District 299), and Susan Martin (a social

---

[3]Plaintiff also attempted to introduce a letter she had written outlining various suspensions and incidents at Carnegie School, but the hearing officer refused to admit the document and stated that the letter covered matters not at issue in the hearing.

6

worker employed by School District 299). The eight counts are denominated as follows:
(1) Performance of Case Study Evaluation Without Written Informed Consent; (2) Performance of Evaluation Despite Clear Parent Objection; (3) Initial Placement in Special Education Without Parental Consent; (4) the Illinois Administrative Code Provision Requiring a Parent to Request a Due Process Hearing to Revoke Consent Violates IDEA; (5) The IHO's Decision and Order Must be Overturned Due to Procedural Violations; (6) The IHO's Decision and Order Must be Overturned due to Inaccurate Findings of Fact and Incorrect Application of Law to Facts; (7) Inappropriate Suspension; and (8) Violation of Darius' Civil Rights.

The ISBE has agreed to modify the provisions of the Illinois Administrative Code that violate the IDEA by requiring a due process hearing before a parent may revoke consent to an evaluation. In addition, on June 17, 2002, the parties developed a Section 504 plan that the court incorporated into an order dated July 12, 2002. In so doing, the court resolved the prospective educational issues in the instant case and left only plaintiff's claims for monetary damages at issue. The instant cross-motions for summary judgment were filed shortly thereafter.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v.

Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

As an initial matter, the court is dismissing Counts I through VI as moot, in light of the parties' settlement agreement and the court's July 12, 2002, order, which resolved all prospective educational issues in the instant dispute. The court recognizes that, to a large extent, the factual allegations contained in those counts may provide a factual basis for the damages sought in Counts VII and VIII. Thus, it bears emphasizing that those factual allegations remain viable (even though the educational relief sought in those counts has already been resolved).

This leaves the court with defendants'[4] motion for summary judgment with respect to Counts VII and VIII. In Count VII, plaintiff alleges that Darius' suspensions were excessive, violated state law, and constituted a deprivation of Darius' right to a public education without due process of law. In Count VIII, plaintiff alleges that defendants' conduct was not objectively reasonable in light of the IDEA, applicable laws, the Fourteenth Amendment right to due process, and the Fourth Amendment right against false arrest.[5] Specifically, in Count VIII,

---

[4]Defendants' motion was made on behalf of the Board of Education of the City of Chicago, Thomas Avery, Sandra Slaughter, Eunice Gilbert, Joan Jankauska, Arlene Lang, and Susan Martin. Plaintiff has dismissed ISBE as a defendant.

[5]In her response to defendants' motion, plaintiff did not offer any evidence (or provide any argument) in support of her Fourth Amendment claims of false arrest, leading the court to
(continued...)

plaintiff challenges the following conduct: (i) changing Darius' placement without a special education eligibility determination; (ii) changing Darius' placement without an IEP; (iii) changing Darius' placement without parental consent; (iv) performing an evaluation of Darius without written informed consent; (v) suspending and/or disciplining Darius for approximately 76 days in response to his behavior; and (vi) initiating Darius' false arrest by Chicago police department on 9 occasions. The court addresses Counts VII and VIII separately below.

The parties do not dispute that a student is entitled to due process before deprivation of his right to a public education. See Goss v. Lopez, 419 U.S. 565, 574, 95 S.Ct. 729 (1975) ("[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."). In the context of suspensions of ten days or less, this means that a student must be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. Id. at 581. Although the requisite notice and hearing should generally precede removal from school, the Goss court recognized that "students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school," with notice and a hearing to follow "as soon as practicable." Id. at 582-583. Hearings in connection with suspensions of ten days or less need not afford the student "trial-type

---

⁵(...continued)
conclude that either such claims have been abandoned or plaintiff has conceded the lack of merit of these claims.

procedures," such as the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Id. at 583.

In the instant case, defendants have not proffered evidence indicating that Darius received adequate notice and an opportunity for a hearing prior to, or as soon as practicable after, Darius' suspensions, thus defeating their motion for summary judgment with respect to Darius' Fourteenth Amendment claim. Defendants cite to plaintiff's Exhibit D, attached to her Local Rule 56.1 Statement, as indicating that "plaintiff received notice each time Darius was suspended and/or the Chicago Police Department was notified." As discussed above, however, the earliest incident report in Exhibit D is dated January 31-February 1, 2001. In that incident, Darius was suspended for ten days. Of the other five reports, only one involves a suspension during the 2000-2001 school year, specifically a five-day suspension commencing February 23, 2001. Thus, plaintiff's exhibit D can hardly support defendants' assertion that notice, much less an opportunity for a hearing, was satisfied with respect to the other numerous suspensions detailed above.

Moreover, the frequency and duration of the suspensions is also troubling. In Goss, the Supreme Court restricted its analysis to a ten-day suspension, and noted, "Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures. Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required." Goss, at 584. On the factual record presented thus far in the instant dispute, the court does not rule out the possibility that suspending Darius for fifty school days (in a series of "short

suspensions" in a six-month period and then requiring that he repeat fourth grade) may indeed constitute an "unusual situation" demanding more formal procedures.

Although not explicitly stated in Count VII, the court presumes that plaintiff seeks relief for this deprivation of due process pursuant to 42 U.S.C. § 1983. Indeed, in Count VIII, which is expressly brought pursuant to § 1983, plaintiff includes Darius' suspensions among those acts of defendants that violated the Fourteenth Amendment right to due process. Defendants do not dispute that a suspension involving a deprivation of constitutional due process may entitle a plaintiff to money damages under § 1983. See Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042 (1978).[6]

Controlling authority provides less guidance with respect to plaintiff's claims for damages under § 1983 for violations of the IDEA, however. In Charlie F. by Neil F. v. Board of Education of Skokie School District 68, 98 F.3d 989, 991 (7th Cir. 1996), the Seventh Circuit held that money damages are not "relief that is available under the IDEA." Citing its 1981 decision in Anderson v. Thompson, 658 F.2d 1205 (7th Cir. 1981), in which the court considered the availability of damages under the IDEA's predecessor statute, the Education for All Handicapped Children Act (EAHCA),[7] the Charlie F. court explained that the structure of the

---

[6]In their reply brief, defendants appear to abandon their argument that plaintiff was required to exhaust her remedies under the IDEA before asserting her 14th Amendment claim. The court notes that, to the extent such exhaustion is arguably required in the instant case, the tortured procedural history catalogued above establishes that further exhaustion would be futile.

[7]Plaintiff cites to Anderson for the proposition that money damages are available under the EAHCA, and thus the IDEA, when "the defendant has acted in bad faith by failing to comply with the statute's procedural provisions in an egregious fashion." In Anderson, however, the Seventh Circuit explicitly limited damages in such exceptional circumstances to "parents' costs of obtaining services that the school district was required to provide." Anderson, at 1213, n. 12.
(continued...)

IDEA, "with its elaborate provision for educational services and payments to those who deliver them," is inconsistent with monetary awards to parents and children. Charlie F., at 991.[8] The Charlie F. court did not consider whether a plaintiff could pursue damages for an IDEA violation under § 1983.

Less than two months later, in Monticello School District No. 25 v. George L. on Behalf of Brock L., 102 F.3d 895 (7th Cir. 1996), cited by both parties, the Seventh Circuit affirmed summary judgment against parents who brought a counterclaim under 42 U.S.C. §§ 1983 and 1988 alleging that their son's "constitutional and statutory rights had been violated by the School District's intentional failure to provide him with an appropriate special education program" under the IDEA and § 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 701 et seq. In denying relief, the court explained that, in the absence of allegations that the School District acted recklessly or with callous indifference, or had a custom of denying or refusing services under the IDEA or § 504, relief under § 1983 was not warranted. Id. at 903. According to the court, "In sum, there is simply no allegation or evidence of bad faith in this case. Therefore, this Court agrees with the district court's finding that plaintiffs had not shown intentional discrimination nor any other sort

---

[7](...continued)
Moreover, the Anderson court emphasized, "In no event can we imagine that tort liability damages were intended." Id.

[8]The court notes that after Anderson, in Town of Burlington School Committee v. Department of Education, 471 U.S. 359, 369, 105 S.Ct. 1996 (1985), the Supreme Court recognized that the Education of the Handicapped Act ("EHA"), formerly the EAHCA, authorized a court to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, was proper under the EHA. Such reimbursement is considered an equitable remedy. Id. at 370-371 (Reimbursement is not a form of damages but instead "merely requires the [school system] to belatedly pay expenses that it should have paid all along....").

12

of intent supporting a § 1983 claim." Id. at 904. Citing to Monticello, the parties in the instant case appear to agree that damages are available under § 1983 for violations of the IDEA when the school district and its officials have acted recklessly, with callous indifference, or in bad faith. The court is less confident than the parties that such relief is available, however.

To begin, in Monticello, the Seventh Circuit did not identify the particular remedy sought by the plaintiffs under § 1983, and therefore it is unclear whether the court's discussion of § 1983 relief pertains to injunctive, declaratory, or monetary relief. Moreover, even assuming that the Monticello plaintiffs sought damages under § 1983, their claim was premised on both the IDEA and § 504. Thus, the Monticello court did not squarely address liability for a § 1983 claim predicated solely on a violation of the IDEA.[9]

This court therefore concludes that a plaintiff may not circumvent the Charlie F. and Anderson rulings by the simple expedient of suing for damages under § 1983, instead of the IDEA. See Crocker v. Tennessee Secondary School Athletic Ass'n, 980 F.2d 382, 387 (6th Cir. 1992) ("Section 1983 merely secures the federally protected rights a plaintiff already holds. It does not expand those rights.... Section 1983 [does] not provide a right to damages where none

---

[9]The IDEA (20 U.S.C. § 1415(l)) provides, "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities." In Marie O. v. Edgar, 131 F.3d 610, 621 (7th Cir. 1997), the Seventh Circuit explained that 20 U.S.C. § 1415(l) (formerly § 1415(f)) "makes clear that Congress intended that a § 1983 remedy be available to the beneficiaries of the [IDEA]." In contrast to the instant case, however, the plaintiffs in Marie O. sought only declaratory and injunctive relief. Id. at 611.

13

existed before.").[10] Thus, the court rejects plaintiff's argument that damages are available under § 1983 for violations of the IDEA.

Even assuming strictly arguendo that the Seventh Circuit would allow damages under § 1983 when the school district and its officials have acted recklessly, with callous indifference, or in bad faith, the court would still conclude that plaintiff is not entitled to damages in the instant case. Although the record suggests that defendants' conduct was regrettable and likely negligent, and violated the IDEA's provisions regarding parental consent to placement in special education, 20 U.S.C. § 1415(b)(3), parental consent for an evaluation, id., and disciplinary procedures for students suspected of having a disability, 20 U.S.C. § 1415(k)(8), no reasonable jury could find that defendants' conduct was reckless, callous, or in bad faith. Indeed, the record indicates that plaintiff was pleased with Darius' placement in Mr. McShan's classroom and asked that he remain there. Further, defendants sought counsel from the Due Process and Mediation Office of Specialized Services for CPS, which instructed Gilbert to continue with the case study evaluation and conduct an IEP meeting until instructed otherwise by an impartial hearing officer. Although this advice was, in retrospect, erroneous, the evidence does not suggest that the individual defendants or school district acted in bad faith in proceeding with the evaluation.[11]

---

[10]But see W.B. v. Matula, 67 F.3d 484, 495-496 (3d Cir. 1995) (holding that damages are available in a § 1983 action, but noting that the IDEA makes "no mention of such relief" and cautioning that a district court may wish to "order educational services, such as compensatory education... or reimbursement for providing at private expense what should have been offered by the school, rather than compensatory damages for generalized pain and suffering.").

[11]Further, there is no evidence that the administrative regulation at issue was routinely interpreted to deny parents the ability to revoke consent to evaluations as would support a § 1983 claim against a municipality.

14

The only case cited to by plaintiff in which § 1983 damages were awarded for procedural violations of the IDEA is Quackenbush v. Johnson City School District, 716 F.2d 141 (2d Cir. 1983), which is distinguishable from the instant case. In Quackenbush, the Second Circuit held that the plaintiff stated a cause of action against her son's school district under § 1983 "for compensatory damages based upon [the school district's] alleged policy to avoid providing expensive special educational services by preventing handicapped children from gaining access to the procedural safeguards guaranteed by the [EHA]." Id. at 148. In that case, a school administrator altered a parental consent form by checking the box indicating that the parents did not give permission for an evaluation of their child for special education. Id. at 143. In fact, the parents were explicitly told to leave the box blank, presumably so that the school administrator could doctor the form. Id. As a result, the school did not do an evaluation and did not provide services, and there was never an IEP or due process hearing at which the plaintiff could present her grievances. There is no evidence of such egregious misconduct in the instant case.

Because the court concludes that compensatory damages are not available under the IDEA or for a § 1983 claim predicated on the IDEA, and further finds that defendants' conduct was not sufficiently egregious to merit damages in the event that such damages were theoretically available, the court grants defendants' motion for summary judgment on plaintiff's § 1983 claims for damages based on the IDEA. In so holding, the court does not mean to suggest that defendants' errors were harmless. As noted above, plaintiff and defendants have agreed upon a comprehensive Section 504 plan that addresses all prospective educational issues, including grade promotion, the effects of the suspensions on Darius' school records, and appropriate

15

provision of services. The court commends the parties for resolving these important issues and enabling Darius to receive the appropriate educational opportunities to which he is entitled.

## CONCLUSION

For the reasons stated herein, both parties' motions for summary judgment with respect to Counts I through VI are denied, and those counts are dismissed as moot in light of the court's July 12, 2002, order. Defendants' motion for summary judgment with respect to plaintiff's § 1983 claim is granted to the extent that such claim is predicated upon violations of the IDEA, and denied to the extent that such claim is predicated upon violations of Darius' Fourteenth Amendment right to due process. This matter is set for a status report on April 17, 2003, at 9:00 a.m.

**ENTER:** **March 27, 2003**

_____
**Robert W. Gettleman**
**United States District Judge**